STATE of Missouri, Respondent,

v.

Archie DIXON, Appellant.

No. 56059.

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

John N. Ehlers, St. Louis, for appellant.

STOCKARD, Commissioner.

Archie Dixon was found guilty of robbery of Willie Armstrong by means of a

dangerous and deadly weapon and sentenced by the court to imprisonment for a term of eighteen years.

The jury reasonably could find from the evidence that about eleven o'clock of the evening of December 31, 1969, appellant and another person, not identified in the record except as being a tall man, followed Willie Armstrong and Jerald Brantley out of a package liquor store at Easton and Webster Streets in St. Louis, Missouri, and the tall man pulled out a pistol and told Armstrong and Brantley to give him all their money. Armstrong gave the gunman some money, who then told appellant to search Armstrong, which he did. He also searched Brantley and took from each all the money he found. A police automobile approached on Webster Street, and the gunman ran away and was not apprehended. Brantley ran toward the police automobile calling for help, and when appellant started to run he slipped on some ice and fell. Armstrong grabbed and held him until he was arrested by the police. A search resulted in finding money on his person which, by reason of its amount and denominations, Armstrong identified as the money taken from him.

Appellant's first point is that the trial court erred in refusing his requested Instruction A as follows:

The Court instructs the jury that if you believe and find from the evidence that on or about December 31, 1969 in the City of St. Louis, Missouri the defendant, Archie Dixon, did appropriate by exercising dominion over Forty-eight Dollars and Sixty-seven Cents, lawful money of the United States, from the person of Willie Armstrong at or about the northwest corner of Easton Avenue and Webster, St. Louis, Missouri, with the intent to deprive the owner permanently thereof and to convert the same to his own use, but that you do not believe and find, beyond a reasonable doubt, that the defendant, Archie Dixon, either acting alone or in concert with another, took the money from the person of Willie Armstrong,

or in his presence and against his will by means of a dangerous and deadly weapon, to wit: a pistol, by putting him in fear of an immediate injury to his person, then you should find the defendant, Archie Dixon, not guilty of Robbery in the First degree by means of a Dangerous and Deadly Weapon.

■ This instruction was a converse of Instruction 1 as to the taking of the money from Armstrong by means of a dangerous and deadly weapon. However, the instruction also included the provision that before the jury could consider the element conversed it was to find that the precise amount of $48.67 was taken. For this reason the instruction was confusing and misleading. In a robbery prosecution it is not necessary to prove the exact amount of the property taken, State v. Washington, Mo., 383 S.W. 2d 518, 525, and it would therefore be improper to provide by instruction that the jury find that a precise amount was taken or the defendant be found not guilty. The instruction was properly refused.

Appellant next contends that the trial court erred in failing to instruct on the lesser offense of stealing from the person. Prior to the giving of instructions, there was no request by appellant for such an instruction, but the motion for new trial contained an assignment of error on this basis. Therefore, the issue is whether the trial court was required to give the instruction as a part of the law of the case.

Appellant relies on State v. Adams, Mo., 406 S.W.2d 608, wherein it was held that in a robbery prosecution when there was substantial evidence to support a finding only of stealing from the person, the trial court was required to give such an instruction as a part of the law of the case. Although appellant admits that Armstrong and Brantley testified that a tall man with a pistol was present with appellant, and that the money was taken from them as a result of putting them in fear by use of the pistol, he asserts that there was substantial evidence that there was not another man

with appellant, and therefore no dangerous and deadly weapon was used because it is admitted that appellant had no weapon.

Brantley testified that while the gunman was pointing the pistol at him and Armstrong, the police automobile approached on Webster Street. The gunman told them to be "cool and quiet" and then ran west on Easton Street. The two policemen in the automobile testified that as they approached the intersection they saw no one until Brantley ran toward them calling for help, and after they moved forward they then saw appellant and Armstrong on the ground scuffling, and that they did not then see a fourth person. A defense witness by the name of Miller also testified that he was in his hardware store and heard a call for help. He looked immediately to the front of the store and saw two men scuffling, but did not see or hear anything that indicated anyone had run from the scene.

This testimony of the two officers when considered in context with the other testimony, is to the effect that as the automobile approached the intersection the officers did not observe anyone, and that after Brantley ran toward them and they had moved forward they then saw Armstrong and appellant scuffling but did not then see a tall man. However, Officer Stone testified that Armstrong and Brantley described the gunman to him, and he then testified as follows:

Q. Officer, did you see this man they described as the other hold-up man with the gun?

A. Yes, sir, I did.

Q. Where did you see him?

A. He was running west on Easton.

■■ The testimony of the officers that they did not see the gunman at the time they saw Brantley running toward them and at the time they saw appellant and Armstrong scuffling does not constitute substantial evidence that there was no gunman

present at the time of the holdup. Also, the testimony of defense witness Miller was only that after Brantley called for help he looked from the back of his store to the front and saw two men scuffling but did not then see a third person. On the other hand, the testimony of Officer Stone above set out constitutes affirmative and substantial evidence corroborative of the testimony of Brantley and Armstrong. There was no substantial evidence that appellant acted alone, and the court was not required to instruct on stealing from the person as a part of the law of the case.

■■ Appellant next asserts in his Point III that the court erred in not instructing the jury that it could not find appellant guilty on the basis of any evidence introduced as to the taking of any sum of money from Jerald Brantley. There was no request for this instruction and the issue was first presented in the motion for new trial.

This contention is without merit for two reasons. First, such an instruction is collateral to the main issue and is cautionary in nature, and it need not be given in the absence of a request. State v. McQuerry, Mo., 406 S.W.2d 624, 629. Second, Instruction 1, the verdict directing instruction, clearly required a finding by the jury that money was taken from Armstrong before it could return a verdict of guilty.

Appellant next asserts that the trial court abused its discretion in overruling his motion for a new trial because his right to a fair trial was prejudiced as a result of "the perjured testimony of Herman Miller," a witness called by appellant, that he heard Armstrong state, "Give me my money." There is nothing in the record to indicate this testimony was perjured, and it cannot be made so by labeling it as such in a motion for new trial.

Appellant contends that Instruction 1 was erroneous in that it submitted that the jury should return a verdict of guilty if it found, among other things, that appellant took "forty-eight dollars and sixty-seven cents, * * * the property of Willie Armstrong,

or any part thereof, however small," because this was in variance with the amount charged in the information. He also asserts that the court should have given the instruction referred to in his Point III, which pertained to the taking of money from Brantley, and argues that the "compounded effect of these errors" was to permit the jury to find him guilty "on a basis tending to prove the taking of the sum of seven dollars from the person of Brantley."

■ What we have previously held disposes of the latter part of appellant's contention, and we need not repeat our ruling. The fact that the instruction submitted the taking of $48.67, "or any part thereof," did not result in a prejudicial variance. The amount taken is immaterial if the property had some value. State v. Washington, supra.

■ Appellant's last point is that Instruction 1 was erroneous because it authorized a verdict of guilty if the jury found that "the defendant acting alone or jointly with another * * * by means of a dangerous and deadly weapon, to-wit: a pistol, did rob * * *." Appellant contends that if he was acting alone he could not be guilty of robbery because it was admitted that he did not have a pistol.

We note that this contention was not presented in the motion for new trial, but appellant contends that it constituted plain error within Rule 27.20(c), V.A.M.R. We do not agree. The instruction required a finding that appellant did rob Armstrong "by means of a dangerous and deadly weapon, to-wit: a pistol." It also provided that the jury should "acquit the defendant if you fail to find all of the aforesaid facts as stated." It was admitted by the State's witnesses that appellant did not have a pistol. Therefore, in effect the jury was instructed that if appellant acted alone he should be acquitted of robbery by means of a dangerous and deadly weapon. For this reason the wording of the instruction did not constitute plain error within the meaning and intent of Rule 27.20(c).

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.